**Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000582
11-JAN-2016
08:42 AM**

NO. CAAP-12-0000582

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


KEIKO MOKIAO, Claimant-Appellee,
v.
ATTRACTIONS HAWAII, Employer-Appellant,
and
HAWAII EMPLOYERS' MUTUAL INSURANCE COMPANY,
Insurance Carrier-Appellant

APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS APPEALS BOARD
(CASE NO. AB2010-097; 2-06-06706)


SUMMARY DISPOSITION ORDER
(By:  Foley, Presiding Judge, and Reifurth and Ginoza, JJ.)

In this workers' compensation case, Employer-Appellant Attractions Hawaii ("Employer") and Insurance Carrier-Appellant Hawaii Employers' Mutual Insurance Company, Inc. appeal from the Decision and Order filed by the Labor and Industrial Relations Appeals Board ("Board") on May 22, 2012 ("May 22, 2012 Decision & Order").  In an unappealed decision on March 12, 2009 (the "March 12, 2009 Shoulder Injury Decision"), the Director of Labor and Industrial Relations ("Director") had found Employer and Insurance Carrier (collectively, "Attractions") to be liable for Claimant-Appellee Keiko Mokiao's physical, right-shoulder injury, which arose out of a work-related incident occurring on May 18, 2006 (the "May 18, 2006 Shoulder Injury").  This dispute relates to Mokiao's subsequent claim for psychological injuries that she alleges arose from the May 18, 2006 Shoulder Injury (the "April 14, 2009 Psychological Injury Claim").[1]

---

[1]      In the May 22, 2012 Decision & Order, the Board refers to Mokiao's condition as a "psychiatric injury."  The parties, however, have used
(continued...)

On appeal, Attractions asks this court to vacate the Board's determination that Attractions is liable to Mokiao under the April 14, 2009 Psychological Injury Claim. Specifically, Attractions alleges that the Board erred in concluding that: (I) Attractions is liable for the psychological injury as a result of, or as a compensable consequence to, Mokiao's May 18, 2006 Shoulder Injury;[2] (II) Attractions is liable to Mokiao for medical care, services, and supplies for the psychological injury;[3] and that (III) the permanent partial disability ("PPD") award it vacated[4] should be remanded.

Upon careful review of the record, the briefs submitted by the parties, and the points made at oral argument, and having given due consideration to the arguments advanced, the issues raised, and the relevant statutory and case law, we resolve Attractions' points of error as follows, and affirm:

I.  The Board did not err in holding Attractions liable for Mokiao's latent psychological injury.

In its first point of error, Attractions asks this court to overturn COL 1, which states that Mokiao "sustained a psychiatric injury as a result of, or compensable consequence to, the May 18, 2006 [S]houlder [I]njury." Attractions urges us to (re)interpret the evidence as to that point, yet we find that, notwithstanding Attractions' proffered alternative reading, the record contains sufficient evidence to support the Board's

---

[1](...continued)
"psychiatric" and "psychological" interchangeably in their briefing to this court, and research reveals that other jurisdictions tend to prefer the latter. For consistency, this opinion uses "psychological" throughout, but this choice should not be construed as a statement about the correctness of each term.

[2]    In connection with this point of error, Attractions challenges the May 22, 2012 Decision & Order's Findings of Fact ("FOFs") 13, 18, 20, 21, 22, and 23 and Conclusion of Law ("COL") 1.

[3]    Specifically, Attractions challenges COL 2 in connection with this point of error.

[4]    In its May 22, 2012 Decision & Order, the Board had determined that the Director provided Attractions with insufficient notice that he would determine Mokiao's percentage of PPD during a hearing on the April 14, 2009 Psychological Injury Claim, and it therefore vacated the Director's PPD determination in a March 18, 2010 Decision (the "March 18, 2010 Psychological Injury Decision") and remanded. Attractions challenges COL 3 in connection with this point of error.

findings and conclusions as to COL 1. As such, the Board did not clearly err,[5] and Attractions' first point of error fails.

A. Latent workplace injuries are compensable notwithstanding uncertainty as to a singular date of manifestation.

Attractions asserts that the Board erred in finding in FOF 21 and concluding in COL 1 that "the effects of [Mokiao]'s psychiatric condition from the May 18, 2006 [S]houlder [I]njury manifested at the earliest by the second half of 2008 or at the latest by March 2009" for purposes of calculating the timeliness of Mokiao's April 14, 2009 Psychological Injury Claim. Specifically, Attractions argues that Mokiao's April 14, 2009 Psychological Injury Claim was untimely under HRS §§ 386-81,[6] -82[7] and claims that "without a more specific date of manifestation and the clarification of the events that led to the manifestation, [Attractions has been] procedurally denied [its] right of due process to assert [its] defenses and/or positions." We disagree.

Under HRS §§ 386-82, "[t]he two-year statute of limitations for the filing of a workers' compensation claim begins to accrue when the claimant's injury becomes *manifest* . . . ." *Hayashi v. Scott, Co.*, 93 Hawai'i 8, 12, 994 P.2d 1054, 1058 (2000) (emphasis added) (citation omitted). In Hawai'i, the

---

[5] Under Hawaii Revised Statutes ("HRS") § 91-14(g) (Supp. 2011), an appeal taken from both FOFs and COLs that present mixed questions of fact and law, such as COL 1 here, is reviewed for clear error. *See Igawa v. Koa House Rest.*, 97 Hawai'i 402, 405-06, 38 P.3d 570, 573-74 (2001) (citations omitted).

[6] HRS § 386-81 (1993) sets forth the worker's duty to notify her employer of a workplace accident: "No proceeding for compensation under this chapter shall be maintained unless written notice of the injury has been given to the employer as soon as practicable after the happening thereof."

[7] HRS § 386-82 (1993) establishes the two-year time frame within which a worker may file her workers' compensation claim, thereby putting the employer on notice that the worker has suffered a possibly compensable injury:

> The right to compensation under this chapter shall be barred unless a written claim therefor is made to the director of labor and industrial relations (1) *within two years after the date at which the effects of the injury for which the employee is entitled to compensation have become manifest* . . . . The claim shall state in ordinary language the time, place, nature, and cause of the injury.

(Emphasis added.)

effects of a workplace injury become *manifest* when "the claimant, as a reasonable [person], should recognize the nature, seriousness and probable compensable character of his [or her] injury or disease." *Demond v. Univ. of Haw.*, 54 Haw. 98, 104, 503 P.2d 434, 438 (1972) (quoting 3 Larson, *Law of Workmen's Compensation* § 84.20 (1971))); see also Haw. Rev. Stat. § 386-82 (requiring claimants to describe the "nature . . . of the injury," which a claimant can only do when he or she is aware that a possibly compensible injury exists).

Logically, however, some worker-claimants will not reasonably "recognize the nature, seriousness, and probable compensable character of [their] injur[ies] or disease[s]" immediately after the offending workplace accident. *Id.; e.g., Hayashi,* 93 Hawaiʻi at 10, 12, 994 P.2d at 1056, 1058 (holding that the claimant timely filed his March 1994 workers' compensation claim—which arose out of a temporomandibular joint ("TMJ") injury, the *symptoms* of which began to bother him "immediately" after the May 1991 workplace incident causing it—because "a TMJ injury is difficult to diagnose" and the claimant "had never heard of a condition called TMJ disorder until it was diagnosed in June of 1992"). As such, reading a specific calendar-date requirement into HRS § 386-81 and/or HRS § 386-82 could prevent a class of worker-claimants with injuries that manifest gradually or are difficult to diagnose from seeking compensation under a workers' compensation system that is designed to protect them. *See Van Ness v. State Dep't of Educ.,* 131 Hawaiʻi 545, 558, 319 P.3d 464, 477 (2014) (liberally-construing workers' compensation statutes to effectuate their remedial nature and humanitarian goals). Accordingly, we hold that uncertainty as to a specific calendar date of manifestation—*i.e.,* as to the exact date on which an individual worker-claimant recognizes "the nature, seriousness and probable compensable character of [her] injury or disease," *Demond,* 54 Haw. at 104, 503 P.2d at 438—cannot, by itself, foreclose recovery. *See Flor v. Holguin,* 94 Hawaiʻi 70, 84, 9 P.3d 382, 396 (holding that the inability to pinpoint the precise cause of claimant's occupational disease was not dispositive of the

compensability of her claim), *rev'd on other grounds*, 94 Hawai‘i 92, 9 P.3d 404 (2000). *See also Brunell v. Wildwood Crest Police Dep't*, 822 A.2d 576, 594-96 (N.J. 2003) (demonstrating that this is the majority rule).

Here, although the Board stated that Mokiao's psychological injury manifested sometime between the "second half of 2008" and "March 2009" rather than on a singular date, FOF 18 demonstrates that the Board likely identified the time frame's boundaries with reference to Mokiao's four counseling sessions with Dr. Marcia Deaton, Ph.D., with whom Mokiao met[8] pursuant to the State of Hawai‘i, Department of Health's mental health assistance program aimed at helping laid-off workers cope with job loss.[9] This lack of precision is reasonable under the facts of this case, where the March 17, 2009 Dr. Deaton Letter, which is the earliest document in the record to diagnose Mokiao with a psychological condition,[10] does not specify the precise moment when Dr. Deaton made that clinical diagnosis, and because Mokiao's first appointment with Dr. Deaton is the first medical

---

[8]     Mokiao met with Dr. Deaton on August 8, 2008, August 22, 2008, October 14, 2008, and on an unspecified date in early 2009. We disagree with Attractions and proceed as if the fourth counseling session occurred between February 21, 2009, and March 17, 2009. Indeed, in a letter addressed to counsel for Attractions and dated March 17, 2009 (the "March 17, 2009 Dr. Deaton Letter"), Dr. Deaton discussed her impressions of Mokiao "last week" and recalled that her final counseling session with Mokiao took place "upon [Mokiao's] return from her trip to Japan for [shoulder] surgery" at Osaka University Hospital on November 4, 2008 (the "November 4, 2008 Surgery"). And according to an "Urgent Request to Continue Hearing" written by Mokiao's attorney, Mokiao returned from the November 4, 2008 Surgery on February 21, 2009.

[9]     We conclude that when the Board used the phrase, *second half of 2008*, in describing the beginning of the manifestation period in FOF 21 and COL 1, it was specifically referring to Mokiao's first appointment with Dr. Deaton. Indeed, FOF 18 states that "[a]t the time she saw Dr. Deaton in 2008, [Mokiao] was close to meeting the diagnostic criteria for a major depressive episode." Likewise, the language of the May 22, 2012 Decision & Order indicates that the Board based its statement about the end of the manifestation period, on the date of the March 17, 2009 Dr. Deaton Letter, for FOF 18 also recounts that "[b]y March 2009, [Mokiao] was suffering from a diagnosable psychiatric disorder . . . ."

[10]     Mokiao never became Dr. Deaton's "patient" due to the temporary nature of the post-layoff health assistance program, and, "per direction of [Dr. Deaton's] supervisor," Dr. Deaton did not keep any records of their sessions together. Moreover, the parties did not call Dr. Deaton to testify at any hearing related to the instant dispute. Therefore, the March 17, 2009 Dr. Deaton Letter is the only documentation of what took place during Mokiao's post-layoff counseling sessions.

documentation of the manifestation of Mokiao's psychological injury contained in the record. Therefore, the record on appeal supports the Board's determination that Mokiao first learned of the nature, seriousness, and probable compensability of her psychological injury—and therefore that the HRS § 386-82 statute of limitations began to run—at some point in time between Mokiao's first appointment with Dr. Deaton and the March 17, 2009 Dr. Deaton Letter. *See*, *Hayashi*, 93 Hawai'i at 12, 994 P.2d at 1058 (holding that the effects of claimant's TMJ injury became "manifest," so that the limitations period under HRS § 386-82 began to run when the claimant's injury "was accurately diagnosed" rather than when the claimant began experiencing symptoms); *Flor*, 94 Hawai'i at 81, 9 P.3d at 393 ("[T]he statute of limitations on [the claimant]'s claims would not have begun to run until her discovery that she had contracted hepatitis C.").

B.     The Board permissibly disregarded Dr. Rogers' opinion about the date of manifestation.

Attractions next attacks COL 1 by arguing that the Board erred in FOF 20 by simply and erroneously ignoring the determination by Dr. Joseph Rogers, Ph.D., that Mokiao's psychological injury likely "was manifest as early as October 2006."[11/] Relying on this determination, Attractions concludes that Mokiao's April 14, 2009 Psychological Injury Claim was therefore barred by HRS § 386-82's two-year limit. We are not convinced.

At the outset, we note that unlike its treatment of Dr. Deaton's opinions in FOF 13, the Board did *not* find all of Dr. Rogers' opinions to be credible in FOF 20.[12/] We defer to the

---

[11/]     Dr. Rogers conducted an Independent Psychological Evaluation ("IPE") of Mokiao, the results of which he offered in two reports alongside his review of Mokiao's work injury-related health records to date. In these reports, Dr. Rogers opines that Mokiao's psychological condition "was fully manifested by [October 20]06[,] when [Mokiao's physician] closed her case . . . ."

[12/]     On the one hand, at the end of its first FOF mentioning Dr. Deaton's opinions about Mokiao, the Board specifically "credits Dr. Deaton's report and opinions." At the end of the first FOF mentioning Dr. Rogers, on the other hand, the text is silent as to the Board's assessment of his credibility. While the Board subsequently discussed its assessment of Dr. (continued...)

Board, as the trier of fact below, in its decision to selectively credit Dr. Rogers' testimony and various IPE reports. *See In re Doe*, 107 Hawai'i 12, 19, 108 P.3d 966, 973 (2005) (quoting *State v. Lubong*, 77 Hawai'i 429, 432, 886 P.2d 766, 769 (App. 1994)) (explaining that the Board, as fact-finder, has inherent authority to make determinations regarding the credibility of witnesses and the applicability of evidence offered). Indeed, the record contains no medical documentation to support Dr. Rogers' opinion that Mokiao's psychological injury became manifest as early as October 2006. *Alkire-Clemen v. Castle Medical Center*, CAAP-12-0000095, 2013 WL 2301089, at *1 (Hawai'i App. May 22, 2013). Furthermore, it is clear from the record that Dr. Rogers misunderstood the meaning of the term "manifestation" in the context of workers' compensation law when he was evaluating Mokiao's case.[13] *Flor*, 94 Hawai'i at 85, 9 P.3d at 397 (citation omitted).

As such, we find no error in the Board's decision to disregard Dr. Rogers' opinion as to when Mokiao's psychological injury became *legally* manifest.

C.   The record contains ample evidence to support the Board's enumerated time-frame of manifestation.

Next, Attractions contends that even if we ignore Dr. Rogers' opinion regarding the date of manifestation, "the [Board] should have determined and concluded that the date of manifestation was August 8, 2008 when [Mokiao] first visited Dr. Deaton *or* August 22, 2008 when she had her second visit with Dr. Deaton *or* October 14, 2008 when she had her third visit with Dr.

---

[12] (...continued)
Rogers in FOF 20, it only credited "the opinions and testimony of Dr. Rogers *relating to [Mokiao]'s diagnosable mental disorder and the source of her emotional distress . . . .*" (Emphasis added.)

[13]   The legal date of manifestation concerns "the moment at which in most instances [a] claimant [in Mokiao's position] ought to know [s]he has a compensable claim." *Flor*, 94 Hawai'i at 82, 9 P.3d at 394 (quoting *Lowrey v. McCormick Asbestos Co.*, 475 A.2d 1168, 1174 (1984)). Yet during his testimony before the Board at the January 21, 2010 hearing on Mokiao's April 14, 2009 Psychological Injury Claim, Dr. Rogers explained that he arrived at October 2006 as a predicted date of manifestation because he believed that to be the date when the "symptoms first became present" of what Dr. Deaton would, years later, diagnose as Mokiao's psychological adjustment disorder.

Deaton." As we find the Board's time-frame to be sufficiently supported by the record, any other conclusion that the facts in the record might *additionally* or *alternatively* support is irrelevant in light of our standard of review on appeal.

Accordingly, we hold that the Board did not err by disregarding Dr. Rogers' date-of-manifestation opinion.

D.     Mokiao was not required to appeal from an earlier disposition resolving her *physical* injury claims before filing the April 14, 2009 Psychological Injury Claim.

Next, Attractions argues that if Mokiao's "psychiatric condition was manifest prior to the Director's [March 12, 2009 Shoulder Injury Decision], then the [Board] should have determined that [the April 14, 2009 Psychological Injury Claim] should be denied because [Mokiao] failed to timely file an appeal of [March 12, 2009 Shoulder Injury Decision] finding that she only had only a right shoulder injury pursuant to [HRS §] 386-87,[14/] [and because] there has not been a change in her condition to allow for a reopening of her claim to add a new injury pursuant to [HRS §] 386-89.[15/]" This argument has no

---

[14/]     HRS § 386-87 (1993) requires, in relevant part, that appeals from the Board's decisions be taken within 20-days after a copy of the decision has been mailed to the parties:

    (a)     A decision of the [D]irector shall be final and conclusive between the parties, except as provided in section 386-89, unless within twenty days after a copy has been sent to each party, either party appeals therefrom to the appellate board by filing a written notice of appeal with the appellate board or the department.

[15/]     HRS § 386-89 (1993) states, in relevant part:

    (a)     In the absence of an appeal and within twenty days after copy of the decision has been sent to each party, the director of labor and industrial relations may upon the director's own motion or upon the application of any party reopen a case to permit the introduction of newly discovered evidence, and may render a revised decision.

    . . . .

    (c)     On the application of any party in interest, support by a showing of substantial evidence, on the ground of a change in or of a mistake in a determination of fact related to the physical condition of the injured employee, the director may, at any time prior to eight years after date of the last payment of compensation, whether or not a decision awarding compensation has been issued, or at any time prior to eight years after the rejection of a claim, review a

(continued...)

8

merit.

First, we note that several of Attractions' sub-arguments on this point misconstrue the sequence of events in this case. In these sub-arguments, Attractions claims that the Director considered Mokiao's psychological condition at the hearing preceding the March 12, 2009 Shoulder Injury Decision, which addressed Mokiao's level of *physical* disability and disfigurement as related to her August 17, *2007* petition to reopen an earlier, physical injury claim and considered an earlier decision on that claim. There is nothing in the record on appeal, however, to suggest that either the Director or the parties began to evaluate Mokiao's psychological injury for at least another month—until after the March 17, 2009 Dr. Deaton Letter. And because Mokiao also filed her April 14, 2009 Psychological Injury Claim after the Director issued the March 12, 2009 Shoulder Injury Decision, we cannot hold that the Director erred by failing to consider the injury Mokiao describes for the first time in her April 14, 2009 claim in the March 12, 2009 decision. Thus, we reject all of the arguments Attractions premises on this reading of the facts.

Second, Attractions fails to cite any authority in support of its contention that a later-manifesting psychological injury does not constitute sufficient grounds for re-opening a workers' compensation case that previously considered only a physical injury. Hawaiʻi courts interpret HRS § 386-3 broadly to "reflect the policy of the Workmen's Compensation Law that an employee should be indemnified for *all infirmities* resulting from his employment." *Van Ness*, 131 Hawaiʻi at 559, 319 P.3d at 478 (quoting *Royal State Nat'l Ins. Co. v. Labor & Indus. Relations Appeal Bd.*, 53 Haw. 32, 37, 487 P.2d 278, 281 (1971) (holding that "psychic injuries arising out of the employment relationship" are compensable under that statute)) (internal quotation marks and brackets omitted). Without more, then, Attractions' argument based on HRS §§ 386-87, -89 fails. *See*

---

15/ (...continued)
compensation case and issue a decision which may award, terminate, continue, reinstate, increase, or decrease compensation.

*Kakinami v. Kakinami*, 127 Hawai'i 126, 144 n.16, 276 P.3d 695, 713 n.16 (2012) (citing *In re Guardianship of Carlsmith*, 113 Hawai'i 236, 246, 151 P.3d 717, 727 (2007) (noting that the ICA may "disregard a particular contention if the appellant makes no discernible argument in support of that position")).

      E.    Mokiao's November 4, 2008 Surgery has no bearing on the April 14, 2009 Psychological Injury Claim.

Attractions also argues that the Board erred by failing to find or conclude that Attractions is "not responsible for the November 4, 2008 . . . [S]urgery and [is] not responsible for any compensable consequences resulting from the intervening condition of the right shoulder as of November 4, 2008 onward." We reject both parts of this argument, namely: (1) that the Board should have addressed liability for the November 4, 2008 Surgery in its May 22, 2012 Decision & Order,[16]/ and (2) that the November 4, 2008 Surgery represents an intervening event cutting off Attractions' liability under the April 14, 2009 Psychological Injury Claim.

(1) Upon its consideration of the April 14, 2009 *Psychological* Injury Claim, the Board had no obligation to issue FOFs and/or COLs related to Mokiao's *physical* injury—including, but not limited to, her November 4, 2008 Surgery. Indeed, the Director has not specifically addressed Mokiao's physical injury since the March 12, 2009 Shoulder Injury Decision, which preceded Mokiao's April 14, 2009 Psychological Injury Claim by more than a month.[17]/ And although Mokiao has, since March 12, 2009, attempted to re-open her physical injury claim for consideration of new evidence related to the November 4, 2008 Surgery, nothing in the record suggests that the Director has considered these requests. Therefore, any determination of liability for the

———————————

[16]/    The Board acknowledged the fact that Mokiao underwent surgery in its May 22, 2012 Decision & Order, but it did not make any findings as to *liability* for this surgery.

[17]/    Although Mokiao's attorney submitted his "Urgent Request to Continue Hearing" on the eve of the February 25, 2009 hearing, nothing in the record suggests that the Board considered any evidence related to Mokiao's November 4, 2008 Surgery before issuing its March 12, 2009 Shoulder Injury Decision.

November 4, 2008 Surgery is irrelevant to the issues before this court on appeal.

(2) Attractions points to nothing in the record suggesting that Mokiao's "psychiatric injury [] was not manifest until after the unrelated November 4, 2008 right shoulder surgery/treatment," which is essentially its intervening-cause argument. Moreover, Attractions has failed to identify where it raised this argument below, and we are unable to locate it ourselves. As such, notwithstanding counsel for Attractions' emphasis on this point at oral argument, we deem it to be waived. *See Lales v. Wholesale Motors Co.*, 133 Hawai'i 332, 343 n.9, 328 P.3d 341, 352 n.9 (2014) (quoting *Kau v. City & Cnty. of Honolulu*, 104 Hawai'i 468, 474 n.6, 92 P.3d 477, 483 n.6 (2004)) (explaining that it is the well-settled law of this jurisdiction that points of error not argued below are deemed waived on appeal). That is, Attractions may not argue for the first time on appeal that the November 4, 2008 Surgery—or some separate event allegedly-necessitating that surgery—constitutes an intervening injury, so we hold that the Board did not err by failing to, *sua sponte*, address the matter below.

F. Mokiao's pre-manifestation-period layoff by Employer is not an intervening injury.

Next, Attractions contests the Board's FOF 23 and argues in the alternative that even if the effects of Mokiao's psychological injury became manifest between the "second half of 2008" and "March 2009," as stated in the May 22, 2012 Decision & Order, the Board should have determined that Mokiao's August 2008 layoff by Employer was an intervening event that cuts off Attractions' liability for any psychological injury manifesting thereafter. However, as the Board noted in FOF 20, Attractions has not provided sufficient evidence to rebut the presumption that Mokiao's psychological injury is the compensable consequence of her May 18, 2006 Shoulder Injury. *See* Haw. Rev. Stat. § 386-85 (1993) ("In any [workers' compensation case,] it shall be presumed, in the absence of substantial evidence to the contrary . . . , [t]hat the claim is for a covered work injury[.]"). Furthermore, the HRS § 386-85 presumption "is not a

11

mere procedural device that disappears upon the introduction of contrary evidence." *Akamine v. Hawaiian Packing & Crating Co.,* 53 Haw. 406, 408, 495 P.2d 1164, 1166 (1972). Indeed, "[t]he law does not require that *all* evidence put before an administrative agency must support the agency's findings"; rather, "[i]t is legally sufficient if findings are supported by reliable, probative, and substantial evidence in the whole record." *Poe v. Haw. Labor Relations Bd.,* 97 Hawai'i 528, 538, 40 P.3d 930, 940 (2002). As we have found that the Board's findings here are so supported, we will not overturn the findings and conclusions Attractions attacks on these grounds.

In sum, although the Board did not identify a singular date on which the effects of Mokiao's psychological injury became manifest, the date on which Mokiao filed the April 14, 2009 Psychological Injury Claim is within two years of all dates within the Board's *second half of 2008-to-March 2009* time-frame. Thus, FOF 22 finding that the claim was timely filed is not clearly erroneous, and the need to identify a singular date within the time frame is an abstract question with no bearing on the outcome of this case. *See E&J Lounge Operating Co. v. Liquor Comm'n of City & Cnty. of Honolulu,* 118 Hawai'i 320, 339, 189 P.3d 432, 451 (2008) ("The duty of this court . . . is to decide actual controversies by a judgment which can be carried into effect, and not to give options upon . . . abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." (quoting *Wong v. Bd. of Regents,* 62 Haw. 391, 395, 616 P.2d 201, 204 (1980))). As Attractions has also failed to demonstrate that its liability should be cut off by any intervening event, and because the record sufficiently supports the Board's credibility determinations and related findings, we hold that those findings are not clearly erroneous, and we therefore reject the first point of error and uphold the May 22, 2012 Decision & Order's FOFs 13, 18, 20, 21, 22, 23 and COL 1.

II. Attractions' future liability for Mokiao's psychological injury is warranted.

Attractions next argues that the Board erred in COL 2

12

by concluding that Attractions is "liable for medical care, services, and supplies for the psychiatric condition/injury." We disagree.

A.    The Board had no obligation to issue an FOF regarding the specific impact of Mokiao's layoff from employment on her psychological injury.

Attractions claims that the Board should have "acknowledge[d] the extent of [Mokiao's] psychiatric injury that ha[d] been caused by or aggravated by the August 2008 layoff" because, it continues, "unless and until [Mokiao] recovers [from] her psychiatric pre-existing layoff condition, [Attractions] should not be responsible for further medical care from August 8, 2008 onward." However, as discussed above, we uphold the Board's determination in FOF 23 that the layoff was merely "an additional stressor that was overshadowed by the emotional effects of the [May 18, 2006 Shoulder Injury]."

As such, we conclude that there is reliable, probative, and substantial evidence in the whole record to support the Board's findings, so the Board did not err by failing to attribute Mokiao's psychological injury to the layoff. *See Van Ness*, 131 Hawai'i at 562, 319 P.3d at 481 (quoting *Akamine*, 53 Haw. at 410, 495 P.2d at 1167) (explaining that, "while it may be sound medically to say that" an alternative event was the cause of an employee's injury, such a statement is inconsequential to workers' compensation because even "the slightest factor of aggravation" can be enough to impose liability).

B.    The Board was not required to apportion responsibility for Mokiao's psychological injury between Attractions and some other party.

Attractions also argues that "the [Board] has erred by not acknowledging the extent of the psychiatric injury that has been caused by or aggravated by the condition and/or injury that necessitated the need for the November 4, 2008 [Surgery] and subsequent medical care." As noted above, however, Attractions fails to identify where it raised this argument below. Furthermore, Attractions provides no authority stating that the Board is required to apportion liability where a worker's injury

has multiple causes, *cf. Van Ness*, 131 Hawai'i at 562, 319 P.3d at 481 ("[T]he slightest aggravation or acceleration of an injury by the employment activity mandates compensation." (quoting *DeFries v. Ass'n of Owners, 999 Wilder*, 57 Haw. 296, 309, 555 P.2d 855, 862 (1976)) (internal quotation marks omitted)), and it is not the responsibility of this reviewing court to make such an argument on Attractions' behalf. *See Kakinami*, 127 Hawai'i at 144 n.16, 276 P.3d at 713 n.16 (citation omitted); Haw. R. App. P. 28(b)(7). Accordingly, the argument fails. *Lales*, 133 Hawai'i at 343 n.9, 328 P.3d at 352 n.9 (citations omitted).

C.    The Board properly determined that Attractions may be liable for future treatment under the April 14, 2009 Psychological Injury Claim.

Attractions next attacks COL 2 by arguing that "the [Board] erred by addressing future issues of medical care not yet before them or the Director." In the relevant portion of COL 2, however, the Board explained that Mokiao's "entitlement to specific medical care, which is not an issue before the Board, is dependent upon all other requirement of Chapter 386, HRS, and the Hawaii Workers' Compensation Medical Fee Schedule being met[.]" The Board correctly states the law.

As the Board acknowledged in COL 2,[18] it is not limited to making its liability determinations only when a specific treatment plan is before it. *See, e.g., Perkins v. Puna Plantation Haw., Ltd.*, No. CAAP-12-0000563, 2013 WL 5019431, at *1-2 (Hawai'i App. Sept. 13, 2013) (holding that the Board has statutory authority to order an employer to pay for future medical treatment even if a specific course of treatment is not anticipated or in dispute at the time of the Board's decision).

---

[18]    In relevant part, COL 2 reads:

> [Mokiao]'s entitlement to specific medical care, which is not an issue before the Board, is dependent upon all other requirements of Chapter 386, HRS, and the Hawaii Workers' Compensation Medical Fee Schedule being met, (e.g., such care, services, and supplies, so long as reasonably needed and as the nature of the injury requires, and appropriately requested, reported, authorized, and billed). *Jochola v. Maui Econ[.] Opportunity, Inc. et al.*, AB 2005-206(M) ([Haw. LIR App. Bd.] Sept[.] 25, 2008).

As such, we hold that it was not error for the Board to impose liability on Attractions for such prospective medical care, services, and supplies as the nature of Mokiao's psychological injury requires should the need for such future treatment arise after the date of this disposition.

    D.    The record sufficiently supports the Board's conclusion that Mokiao's psychological injury warrants future treatment.

Attractions additionally attacks the validity of COL 2 by arguing that the Board failed to "consider[] the credible evidence, or lack thereof, regarding the need for medical care" because "there are no opinions from any health care providers suggesting or providing opinions that [Mokiao] was in need of further treatment as of the [May 22, 2012 Decision & Order]." This argument is factually incorrect.

While it is true that "*an award of future treatment* as part of the original claim cannot be affirmed without evidence in the record supporting a determination that future treatment will be 'reasonably needed' to relieve the claimant from the effects of the work injury[,]" *Kuaimoku v. State, Dept. of Educ. Kauai,* No. CAAP-11-0000616, 2014 WL 2921835, at *2 (Hawaiʻi App. June 27, 2014) (emphasis added); *accord Pulawa v. Oahu Const. Co.,* 136 Hawaiʻi 217, ___, 361 P.3d 444, 452 (2015) (discussing HRS §§ 386-21(a), -24), the record here does contain such supporting evidence. In the March 17, 2009 Dr. Deaton Letter, for example, Dr. Deaton stated that she believed Mokiao will benefit from future psychological treatment: "[W]ith some additional therapy/counseling, I expect that [Mokiao] will return to her pre-injury level of functioning." Accordingly, Dr. Deaton referred Mokiao to "several psychologists and, if necessary, psychiatrists to contact for follow-up services." Furthermore, in one of Dr. Rogers' IPE Reports, he stated that Mokiao "could probably benefit from continued psychological treatment"; although Dr. Rogers also concluded that "[Mokiao] would be much better off to pursue psychological treatment following case []closure, outside of the Workers' Compensation system. And at the relevant Board hearing, Dr. Rogers agreed that "it's

possible" that Mokiao can benefit from future treatment after resolution of this case.

As we will not disturb the Board's credibility determinations affording weight to these medical opinions unless they are not supported by sufficient evidence in the record on appeal, *Bremer v. Weeks*, 104 Hawaiʻi 43, 51, 85 P.3d 150, 158 (2004) (citations omitted), COL 2 stands.

III. Attractions has waived its objection to the sufficiency of the notice it received prior to the January 21, 2010 hearing before the Director.

For its final point, Attractions challenges COL 3 and argues that the Board "erred in concluding that the [PPD] award should be vacated" because the Notice of Hearing dated December 18, 2009 did not properly notify the parties that PPD would be addressed at the January 21, 2010 hearing on Mokiao's April 14, 2009 Psychological Injury Claim. However, Attractions does not identify where it raised the argument below, and we observe no evidence of it in the record. As such, the argument is waived. *See Rapp. v. Schmidt*, No. 27883, 2008 WL 4001189, at *1 (Hawaiʻi App. Aug. 29, 2008) (citing *In re Guardianship of Carlsmith*, 113 Hawaiʻi at 225, 151 P.3d at 706) (finding that the parties, who appeared through counsel at a hearing and "did not make any objections regarding notice or service at that time[,]" had waived those objections).

For the foregoing reasons, we affirm the Labor and Industrial Relations Appeals Board's Decision and Order filed on May 22, 2012.

DATED: Honolulu, Hawaiʻi, January 11, 2016.

On the briefs:

Robert E. McKee, Jr.
(Law Office of Robert E. McKee, Jr.)
for Employer-Appellant and
Insurance Carrier-Appellant

Jeffrey M. Taylor
for Claimant-Appellee.

Presiding Judge

Associate Judge

Associate Judge

16